972 P.2d 1027

**Harold A. SIMPSON, Plaintiff–Appellee,**

**Biltmore Hotel Partners,**
**Intervenor–Appellee,**

v.

**COMMITTEE AGAINST UNCONSTITU-TIONAL TAKINGS, L.L.C.—Kabuto Arizona Properties, L.L.C., Defendants–Appellants.**

**No. 1 CA–CV 98–0246.**

Court of Appeals of Arizona, Division 1, Department D.

July 28, 1998.

Review Denied Feb. 12, 1999.

Meyers Law Firm, P.C. by J. Tyrrell Taber, James F. Wees, Phoenix and Lisa T. Hauser, Scottsdale, for Appellant.

Francis J. Slavin, P.C. by Francis J. Slavin, Chad H. Kolodisner, Phoenix, for Appellee Simpson.

Meyer, Hendricks, Bivens & Moyes, P.A. by Ed Hendricks, Paul L. Stoller, Phoenix, for Appellee Biltmore Hotel Partners.

Office of the City Attorney by Roderick G. McDougall, City Attorney, William F. Bock, Assistant City Attorney, for City of Phoenix.

NOYES, Presiding Judge.

¶ 1 After the Phoenix City Council ("Council") rezoned two golf courses in the Arizona Biltmore Estates, Defendants–Appellants ("Kabuto") circulated a referendum petition and obtained enough signatures to have the rezoning decision referred to the voters. After the City of Phoenix ("City") set the date for a referendum election, Plaintiff–Appellee Harold Simpson filed this lawsuit to block the election. The complaint alleged that the referendum petition was invalid because it referred an administrative act rather than a legislative act. In essence, Simpson argued that the referendum petition was invalid because Kabuto attached to it the rezoning ordinance when it should have attached the minutes of the meeting at which the Council made the rezoning decision. Relying mainly on *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 811 P.2d 22 (1991), the trial court found the referendum petition invalid and enjoined the City from holding the election. Kabuto appealed.

¶ 2 We distinguish *Pioneer Trust* because, there, the minutes were approved before the ordinance was adopted and, here, the ordinance was adopted first. We also distinguish *Pioneer Trust* because it predated the enactment of Arizona Revised Statutes Annotated ("A.R.S.") section 19–121(E), a statute which expressly provides that, when the adopted ordinance pre-exists the approved minutes, the ordinance should be attached to the petition, as Kabuto did here. Because we conclude that Kabuto's petition was valid, we reverse the injunction order and remand for dismissal of the complaint.

**I.**

¶ 3 The Phoenix City Planning Commission's zoning application Z–92–97–6 sought to rezone about 231 acres of Kabuto's property from RE–35 (residential estate district) to GC (golf course district), thereby preserving the use of that property as golf courses and preventing other uses. At a public hearing on December 10, 1997, the Council voted to approve the rezoning application. On December 17, the Council adopted Ordinance G–4066, which changed the City's official zoning map to show GC zoning on the property. The minutes of the December 10 meeting were approved on January 14, 1998.

¶ 4 Arizona Revised Statutes Annotated section 19–142(A) (Supp.1997) provides that a referendum petition "shall be filed with the city or town clerk within thirty days after passage of the ordinance, resolution or franchise." Section 19–142(C) provides that "the thirty-day period specified in subsection A begins on the day that the ordinance or resolution is available from the city or town clerk, and the ordinance or resolution shall not become operative until thirty days after the ordinance or resolution is available."

¶ 5 On December 19, Kabuto obtained a referendum number, R–1–97, from the city clerk so that it could circulate a petition to have the rezoning decision placed on the ballot at the next special election. The clerk provided Kabuto with the adopted ordinance and a zoning map of the property, and Kabuto attached these documents to the petition, together with a legal description of the property. Kabuto then circulated the petition to collect signatures, and it filed the petition with the required number of signatures on January 16, 1998—the day the ordinance would have taken effect had the petition not been filed. *See* A.R.S. §§ 19–142(B), –142(C) (Supp.1997). After the clerk certified the petition, the Council, pursuant to the Phoenix City Charter, Chapter XVI, section 3.A, reconsidered and re-adopted the ordinance, and set a special election. *See* A.R.S. § 16–204(B).

¶ 6 Simpson, a Biltmore Estates property owner, filed this complaint to block the special election, and Biltmore Hotel Partners filed a motion to intervene. (Simpson and Biltmore are hereinafter referred to as "Appellees.") After a hearing, the trial court found the petition invalid and enjoined the City from holding the election. The court concluded: "The adoption of the ordinance on December 17 was not a legislative act and therefore cannot be subject to a referendum election.... The legislative action which

was taken on December 10, 1997 was not attached to the signature sheets which were circulated." Our jurisdiction of the appeal is pursuant to A.R.S. sections 12–120.21(A)(1) (1992) and 19–122(C) (Supp.1997). *See Perini Land & Dev. Co. v. Pima County,* 170 Ariz. 380, 381–82, 825 P.2d 1, 2–3 (1992).

## II.

¶ 7 The trial court found that the referendum petition was invalid as a matter of law. We review that finding *de novo. See Arizona Bd. of Regents v. Phoenix Newspapers, Inc.,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).

¶ 8 The Arizona Constitution provides that legislative actions are subject to referendum. *See* Ariz. Const. art. 4, pt. 1, § 1(8) ("[T]en percentum of the electors may propose the Referendum on legislation enacted within and by such city, town, or county."). Zoning decisions are legislative acts. "In multiple decisions over a lengthy period, this court has consistently held that zoning decisions are legislative acts subject to referendum." *Fritz v. City of Kingman,* 191 Ariz. 432, 957 P.2d 337 (1998).

¶ 9 A referendum petition must "comply strictly with applicable constitutional and statutory provisions." *Western Devcor, Inc. v. City of Scottsdale,* 168 Ariz. 426, 429, 814 P.2d 767, 770 (1991). Whether Kabuto strictly complied with the law is an issue that turns on whether *Pioneer Trust* is as universal in application as Appellees argued and the trial court concluded.

¶ 10 In *Pioneer Trust,* a county board of supervisors decided to allow a rezoning, but it set numerous conditions that the property owner had to meet before the board would adopt the rezoning ordinance. 168 Ariz. at 64, 811 P.2d at 25. A citizen's group promptly sought a referendum election, and it attached to the petition the approved minutes of the meeting at which the board had granted conditional approval of the rezoning application. Seeking to block the referendum election, the property owner argued that the conditional approval was not subject to referendum; it argued that the contestants had to wait until the board adopted the rezoning

ordinance. In rejecting that argument, the *Pioneer Trust* court concluded that the logical time for a referendum is "when the rezoning is conditionally approved. This is shortly after the contested proceedings and public hearings.... It is also before owners, developers, and lenders expend huge sums of money to comply with the conditions." *Id.* at 66, 811 P.2d at 27. The court explained that "practical as well as legal considerations lead us to conclude that conditional approval of rezoning is a referable legislative act." *Id.*

¶ 11 Although *Pioneer Trust* involved conditional approval of a rezoning application and the present case does not, we find the significant difference between the cases to be this: There, the minutes were approved before the ordinance was adopted; here, the ordinance was adopted first. This timing is significant because, after *Pioneer Trust* issued, the legislature enacted A.R.S. section 19–121(E) (Supp.1997), which provides as follows:

> [T]he measure to be attached to the petition as enacted by the legislative body of an incorporated city, town or county means the *adopted ordinance* or resolution or, in the *absence of a written ordinance* or resolution, that portion of *the minutes* of the legislative body that reflects the action taken by that body when adopting the measure. In the case of zoning measures the measure shall also include a legal description of the property and any amendments made to the ordinance by the legislative body.

(Emphasis added.)

¶ 12 The rezoning ordinance in this case was adopted on December 17, and the minutes of the December 10 meeting were not approved until January 14, 1998. It is undisputed that the clerk could not provide Kabuto with the December 10 minutes before they were approved. Although presumably not by design, when the Council adopted the ordinance before it approved the minutes, it created a dilemma for contestants seeking a referendum on the rezoning decision. If contestants waited for the Council to approve the minutes on January 14, the opposition could argue that they had waited too long— that section 19–121(E) required them to act

based on the December 17 ordinance, which went into effect on January 16. If, on the other hand, contestants acted based on the ordinance, the opposition could argue, as it did here, that they did not wait long enough—that *Pioneer Trust* required them to wait for the January 14 approved minutes because the ordinance was merely an administrative act and its effective date was immaterial. We conclude that the referendum process has to be clearer than that; it cannot be clouded with litigation-generating ambiguities that jeopardize the referendum rights of those who guess wrong on whether to attach an adopted ordinance or the approved minutes.

¶ 13 *Pioneer Trust* provided clarity for those seeking a referendum when the minutes are approved long before the ordinance is likely to be adopted. Section 19–121(E) provides clarity for those seeking a referendum when the ordinance is adopted before the minutes are approved. The all-encompassing bright-line rule provided by section 19–121(E) is as follows: If the ordinance or resolution has been adopted, attach that to the referendum petition; in the absence of a written ordinance or resolution, attach the approved minutes.

¶ 14 The Council's December 10 rezoning decision, like the one in *Pioneer Trust*, was a "definite, specific act" and was subject to referendum. *See Fritz*, 191 Ariz. at 435, 957 P.2d at 340. *See also Northeast Scottsdale Property Owners' Ass'n v. City of Scottsdale*, 258 Ariz. Adv. Rep. 12, 14 (App. Dec. 11, 1997) (petition for review pending) (determining that rezoning decision eight years prior to adoption of the ordinance was referable legislative act). After December 10, contestants had to act based on the first embodiment of the rezoning decision. That document was the December 17 ordinance. Sections 19–121(E) and 19–142 expressly provide for basing a referendum petition on an ordinance (among other things). These statutes are not inconsistent with constitutional and statutory "title and text" provisions, which are as follows: The Arizona Constitution, article 4, part 1, section 1(9), provides that "[e]ach sheet containing peti-

tioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed to be initiated or referred to the people ...."; A.R.S. section 19–121(A)(3) requires that "[s]ignature sheets filed shall ... be attached to a full and correct copy of the title and text of the measure or amendment to the constitution, proposed or referred by the petition."

¶ 15 Appellees argue that only the approved minutes could satisfy the "title and text" requirements. They contend that the voters would not know from the ordinance that it rezoned the golf courses because the ordinance did not contain the "stipulations and concurrent acts that are essential to provide a full understanding of the measure." We disagree. *Pioneer Trust* held that attaching the approved minutes reflecting the action taken by the county board satisfied constitutional and statutory requirements. 168 Ariz. at 67, 811 P.2d at 28. *See also Cottonwood Dev. v. Foothills Area Coalition*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982) (holding similarly). *Pioneer Trust* and *Cottonwood*, however, did not hold that attaching the minutes was the *only* way to comply with the law.

¶ 16 In *Pioneer Trust*, the approved minutes were the first available "measure" that reflected the Board's rezoning decision. Here, the adopted ordinance was the first available "measure." Because the adopted ordinance was the first embodiment of the Council's December 10, 1997, legislative act, Kabuto complied with the law when it attached the ordinance to the petition. Appellees' attempt to trivialize the ordinance by calling it a "map change" does not diminish either the legal significance of the ordinance or the provisions of A.R.S. sections 19–121(E) and 19–142.

¶ 17 Kabuto's petition sufficiently informed the average petition signer of what was sought to be referred to the ballot. Each signature sheet had the following "Referendum Description":

This Petition seeks to refer for a vote of the people Ordinance No. G4066, formally approved by the Phoenix City Council on December 17, 1997, which rezoned approximately 230.9 acres known as the Adobe

and Links Golf Courses within the Arizona Biltmore Estates to GC, a zoning classification for golf courses created on May 1, 1996.

Attached to each signature sheet was the ordinance, as follows:

ORDINANCE NO. G 4066

AN ORDINANCE AMENDING SECTION 601 OF THE CITY OF PHOENIX ZONING ORDINANCE BY ADOPTING OFFICIAL SUPPLEMENTARY ZONING MAP NO. 1006

———

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF PHOENIX as follows:

SECTION 1. That Section 601 of the City of Phoenix Zoning Ordinance is hereby amended by adopting Official Supplementary Zoning Map No. 1006 signed by the Mayor and City Clerk, which accompanies and is annexed to this ordinance and declared a part hereof.

PASSED by the Council of the City of Phoenix this 17 day of December, 1997.

The annexed "Official Supplementary Zoning Map No. 1006" showed the golf courses, their new GC designation, and other property in the area. Also attached was a legal description of the property.

¶ 18 *Sherrill v. City of Peoria*, 189 Ariz. 537, 540, 943 P.2d 1215, 1218 (1997), held, "Section 19–121(E) establishes a bright-line rule that specifies three items to be attached to each petition: (1) the adopted ordinance or resolution; (2) a legal description of the property; and (3) amendments, if any, made to the ordinance. The statute on its face requires no less and no more." The Kabuto petition meets this standard. In approving the petition before it, the *Sherrill* court stated, "[W]e discern nothing in the petition that is calculated to mislead a petition signer." *Id.* We hold the same opinion about the Kabuto petition.

¶ 19 We disagree with Appellees' argument that the petition needed to contain stipulations regarding other Kabuto property. Those stipulations required that the Council hear three zoning applications relat-

ed to the golf courses on the same agenda. The Council approved the stipulations, heard the three applications, and voted on each of them separately. That Kabuto chose to seek referendum on only the golf course rezoning was its choice. Any of the three rezoning decisions could be referred separately.

¶ 20 The City takes no position on the merits of the case, but it requests that, if Kabuto prevails, the case be remanded to the Council "for the purpose of either repealing the ordinance or for setting a referendum election as provided by the City Charter." Phoenix City Charter, Chapter XVI, section 3.A provides that, during the thirty-day period following final passage of the ordinance, it shall be "the duty of the council to reconsider such ordinance" if a referendum petition containing a sufficient number of valid signatures is presented to it. The Council reconsidered the ordinance after the clerk certified the petition. We are cited no authority to order a second reconsideration.

## III.

¶ 21 The Council's decision to rezone the golf courses was a legislative act. Because the Council adopted the rezoning ordinance before it approved the minutes of the meeting at which it made the rezoning decision, Kabuto correctly decided to comply with section 19–121(E) by attaching the ordinance to the referendum petition. Because Kabuto's petition strictly complied with the law, we reverse the order enjoining the City from conducting a referendum election and we remand with directions to dismiss the complaint.

THOMAS C. KLEINSCHMIDT, Judge and A. JOHN PELANDER, III, Judge, concur.